**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MARY BARNHART,

                    Plaintiff,

    vs.

THE TRAVELERS HOME AND MARINE
INSURANCE COMPANY,

                 Defendant

**CASE NO.**

**NOTICE OF REMOVAL**

### NOTICE OF REMOVAL

Defendant, The Travelers Home and Marine Insurance Company ("Defendant"), hereby removes to this Court the state court action described below. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332, 1337, 1441, because there is complete diversity of citizenship as to all properly joined parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, as to the named Plaintiff. This Court also has jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), 28 U.S.C. § 1441 (a) and (b), and 28 U.S.C. § 1453, because this is a putative class action with more than 100 putative class members that seeks to recover more than $5,000,000.

### NATURE OF THE CASE

1.    Plaintiff filed this lawsuit on April 1, 2019, in the Court of Common Pleas of Fayette County, Pennsylvania, entitled *Mary Barnhart v. The Travelers Home and Marine*

*Insurance Company,* Case No. 676 of 2019 GD.  Defendant was served on April 3, 2019, so this Notice of Removal is being filed within 30 days of service.

      2.      Plaintiff alleges that, on July 15, 2015, she was injured as a passenger while on a motorcycle operated by her husband, William Barnhart, when a vehicle driven by Terry Heffner crossed in front of the motorcycle and caused it to leave the road.  (Compl., ¶ 4.)

      3.      Plaintiff alleges that at the time of the accident, she had in effect a motor vehicle insurance policy issued by Defendant which provided uninsured/underinsured motorist ("UM/UIM") coverage with limits of $50,000 per person and $100,000 per accident.  (Compl., ¶ 5.)

      4.      According to Plaintiff, she made a claim against and recovered from the tortfeasor's liability carrier, but her damages exceeded the applicable policy limits from that insurer.  (Compl., ¶¶ 6, 7.)

      5.      Plaintiff alleges she then made a claim for underinsured motorist coverage ("UIM") benefits under the policy issued to her by Defendant.  (Compl., ¶ 7.)

      6.      Plaintiff alleges that, on March 15, 2019, Defendant denied her UIM claim based on the regular use exclusion ("Exclusion") in Defendant's policy.  (Compl., ¶ 8 & Exhibit B thereto.)

      7.      As set forth in the denial letter attached as Exhibit B to the Complaint, the Exclusion precludes UM/UIM coverage for bodily injury sustained by the insured while occupying or when struck by any motor vehicle the insured owns or that is furnished or available for the insured's regular use and is not insured for UM/UIM coverage under the applicable policy.  (Compl., Exhibit B.)  Because the motorcycle was owned by the Barnharts and was not insured under the Barnharts'

automobile policy, or, for that matter, by any policy issued by Defendant, Defendant denied UIM coverage based on the Exclusion. (*Id.*)

8.     Plaintiff alleges that at all relevant times UM/UIM coverage under the automobile policy issued by Defendant had not been waived in accordance with Sections 1731(b) and (c) of the MVFRL, 75 Pa.C.S.A. (Compl., ¶ 10.)

9.     According to Plaintiff, the Exclusion operates as a *de facto* waiver of UM/UIM coverage, in contravention of Section 1731(a) of the MVFRL and is therefore unenforceable. (Compl., ¶¶ 12, 13.)

10.     Plaintiff seeks a declaration that the Exclusion violates Section 1731 and "does not preclude Barnhart from recovering UIM benefits under the Travelers Policy." (Compl., ¶ 14.)

11.     Plaintiff seeks to represent the following putative class: "(1) persons injured in motor vehicle accidents from April 1, 2013, to the present as the result of the negligence of an uninsured or underinsured motorist; (2) who were "insureds" under motor vehicle insurance policies issued by Travelers wherein UM/UIM coverage was not waived pursuant to Sections 1731(b) and (c) of the MVFRL; and (3) for whom UM/UIM benefits were not paid by Travelers due to the Exclusion." (Compl., ¶ 25.)

12.     Plaintiff asserts the following substantive causes of action: Count I: Declaratory Relief, seeking a declaration that the Exclusion violates the MVRFL and therefore does not preclude Plaintiff or the putative class members from recovering UIM benefits from Defendant; and Count II: Assumpsit, alleging that Defendant breached the insurance policy by denying Plaintiff's claim for UIM coverage based on the Exclusion, which allegedly entitles Plaintiff to recover an amount not in excess of $50,000 from Defendant. (Compl., pp. 2-3.)

3

## I.  THE COURT HAS JURISDICTION UNDER TRADITIONAL DIVERSITY PRINCIPLES

13.  Federal district courts have subject matter jurisdiction in cases "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a)(1).

14.  This Court has traditional diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because (1) the amount in controversy exceeds $75,000, exclusive of interest and costs, and (2) the action is between citizens of different states. 28 U.S.C. §§1332(a), 1441(b).

**Citizenship**

15.  For diversity purposes, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

16.  At the time of the commencement of this action and as of the date of this Notice of Removal, the named plaintiff, Mary Barnhart, was alleged to be and is a citizen of Kentucky. (Compl., ¶ 1) ("The plaintiff ... is an adult individual now residing in Mount Sterling, Kentucky."). At the time this lawsuit was filed and as of the date of this Notice of Removal, the Defendant was and is a non-Pennsylvania and non-Kentucky citizen.  Defendant is incorporated in Connecticut and has its principal place of business in Connecticut.  Declaration of Christine Getner ("Getner Dec."), attached hereto as Exhibit A, ¶ 4.  Because Plaintiff is a citizen of Kentucky and this action is brought in Pennsylvania, and Defendant is not a citizen of either of those states, there is complete diversity of citizenship between Plaintiff and Defendant.

4

**Amount in Controversy**

17.    "Even if a plaintiff states that her claims fall below the [amount in controversy] threshold, this Court must look to see if plaintiff's actual monetary demands in the aggregate exceed the threshold, irrespective of whether the plaintiff states that the demands do not." *Lewis-Hatton v. Wal-Mart Stores E., LP*, No. 13-7619, 2014 WL 502367, at *3 (E.D. Pa. Feb. 7, 2014) (quoting *Morgan v. Gay*, 471 F.3d 469, 474–75 (3d Cir. 2006)).

18.    Here, the Complaint alleges that Plaintiff "requests an amount not in excess of $50,000, plus interest and costs." (Compl., p. 3.)  This Court, however, is not bound by Plaintiff's allegation regarding the damages she is seeking, especially since nowhere in her Complaint has Plaintiff expressly disclaimed damages in excess of $75,000. *See, e.g., Jones v. Gemalto, Inc.*, No. CIV.A. 15-00673, 2015 WL 3948108, at *3 n. 6 (E.D. Pa. June 29, 2015) ("Jones also asserts that 'The Complaint seeks compensatory damages in an amount in excess of $50,000 which does not exceed the required $75,000 jurisdictional minimum.' ... While this is an accurate recitation of a majority of the 'wherefore' clauses in the complaint, Jones' demand, which is designed to avoid the arbitration requirements in state court, does not expressly limit the amount in controversy to an amount less than $75,000.... Jones cannot rely on his open-ended allegation to avoid Gemalto's assertion that the amount in controversy exceeds $75,000."); *Ramberger v. Gov't Employee Ins. Co.*, No. 3:08CV1209, 2009 WL 1514493, at *2 & n. 2 (M.D. Pa. May 29, 2009) ("Plaintiff argues that because she seeks only $70,000 in the complaint, the amount in controversy requirement is not met.  Defendant argues that it has provided evidence that the amount in controversy in fact exceeds $70,000.... Plaintiff does not argue, and cites to no authority to support the position that, the request for damages in her complaint will prevent her from obtaining more than that amount

5

in court."); *Valley v. State Farm Fire & Cas. Co.*, 504 F. Supp. 2d 1, 6 (E.D. Pa. 2006) ("While the Court of Common Pleas civil cover sheet reports that the amount in controversy is less than $50,000, this court is not bound by that determination when considering whether the jurisdictional requirement has been met.  The court declines to remand this action merely because it has been designated for arbitration in state court."). *See also Price v. Foremost Indus., Inc.*, No. CV 17-00145, 2017 WL 6596726, at *3 (E.D. Pa. Dec. 22, 2017) ("Plaintiffs' Complaint states $54,669.97 in specific damages, references additional injury suffered, and does not expressly limit the amount in controversy to less than $75,000.... As it is not a legal certainty that Plaintiffs cannot recover $75,000 or more, the jurisdictional requirement has been met."); *Day v. Kia Motors Am., Inc.*, No. 2:16-CV-01028-JHE, 2017 WL 264459, at *3 (N.D. Ala. Jan. 20, 2017) (denying remand motion based on plaintiff's "failure to disclaim entitlement to more than $ 75,000.00[.]"); *Martinsville Corral, Inc. v. Soc'y Ins., No.* 117CV03103TWPDML, 2018 WL 1069440, at *3 (S.D. Ind. Feb. 23, 2018) (denying remand motion; stating "MCI does not ... explicitly disclaim any damages exceeding $75,000.00 in order to restrict federal jurisdiction.").

19.    Here, while Plaintiff states her damages are not excess of $50,000 (Compl., p. 3), she does not expressly disclaim damages above $75,000.  Moreover, the statement that Plaintiff's damages do not exceed $50,000 is only in connection with Count II, for Assumpsit.  The Complaint has no such limitation in connection with Count I, for Declaratory Relief, where Plaintiff asks for a declaration that the Exclusion is invalid and that she is "entitled to UM/UIM benefits which were previously not paid." (Compl. pp. 2-3.)  "Although declaratory judgments do not directly involve the award of monetary damages, it is well established that the amount in controversy in such actions is measured by the value of the object of the litigation," and courts deny motions to remand

6

where, as here, the amount put at issue by the declaratory relief sought exceeds the jurisdictional threshold. *Signature Bldg. Sys., Inc. v. Spears Mfg. Co.*, No. 3:17-CV-1795, 2018 WL 1123724, at *3 (M.D. Pa. Feb. 26, 2018) (citations omitted). *See also* Charles Alan Wright, et al., 14AA Fed. Prac. & Proc. Juris. § 3708 (4th ed.) ("With regard to actions seeking declaratory relief, the amount in controversy is the value of the right or the viability of the legal claim to be declared[.]"). Under either Count of Plaintiff's Complaint, the amount in controversy here is clearly over $75,000.

20.    As set forth in the Complaint (¶ 5 & Exhibit A thereto), Plaintiff alleges the applicable policy issued by Defendant has UM/UIM limits of $50,000. As the policy documents attached to the Complaint indicate, however, Plaintiff is entitled to stacked UM/UIM coverage for each of her two vehicles—*i.e.,* a total of $100,000. (Compl., Exhibit A thereto.) The policy declarations page indicates Plaintiff has "stacked" UM/UIM coverage, and the UM/UIM endorsement states, at p. 4, that for stacked coverage, "our maximum limit of liability ... is the sum of the applicable limits shown in the Declarations or Schedule of this endorsement for Coverage D8." (*Id.*)

21.    And the March 15, 2019 letter attached to the Complaint is further indication that stacked UM/UIM coverage is at issue here:

> It is our position that the Supreme Court's decision in *Gallagher v. GEICO* does not apply to the claim for UIM benefits submitted by Ms. Barnhart, *because Gallagher only applies where the insured is seeking to stack UIM benefits under two policies issued by the same carrier, to the same named insured, and both policies provide stacked benefits. Here, Travelers did not issue both policies.* Also, to the extent that the Progressive policy does not provide for stacked UIM benefits, *Gallagher* would not apply for that reason as well.

(Compl., Exhibit B thereto (emphasis added).)

7

22.    But most significantly, as set forth in the Declaration of Christine Getner, the claim professional in charge of evaluating Plaintiff's claim, had Plaintiff not been subject to the Exclusion which is the subject of her lawsuit then Defendant would definitely have paid her more than $75,000 in stacked UM/UIM coverage benefits based on the extent of the injuries she suffered.  Getner Dec., ¶ 5.

23.    In short, Plaintiffs' Complaint allegations and the Exhibits she attaches to her Complaint, coupled with the Declaration of Christine Getner, show conclusively and to a certainty that the amount in controversy here is over $75,000.

24.    Since complete diversity exists and the requisite $75,000 amount in controversy for an individual plaintiff is satisfied here under 28 U.S.C. § 1332(a), this Court has supplemental jurisdiction over the putative class members under 28 U.S.C. § 1367.  *See Exxon Mobil Corp. v. Allapattah Services, Inc.,* 545 U.S. 546, 549 (2005) (where a named plaintiff in a class action satisfies the amount in controversy requirement, 28 U.S.C. § 1367 authorizes supplemental jurisdiction over the claims of the putative class members); *Papurello v. State Farm Fire and Casualty Co.,* 144 F. Supp. 3d 746, 752 (W.D. Pa. 2015) ("Section 1367 authorizes supplemental jurisdiction over putative class members' claims if 'at least one named plaintiff' satisfies § 1332(a)(1)'s $75,000 amount in controversy requirement and complete diversity is present.").

## II.    IN ADDITION, THIS COURT HAS CAFA JURISDICTION OVER THIS ACTION

### Class Action.

25.    This lawsuit is a class action as defined by 28 U.S.C. § 1332(d)(1)(B).  CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought

by 1 or more representative persons as a class action." *Id.* Plaintiff expressly seeks certification of a class of Pennsylvania insureds. (Compl, ¶ 25.) As such, this action is brought on behalf of a class as defined by CAFA.

**Diversity of Citizenship.**

26.    At the time this lawsuit was filed and as of the date of this Notice of Removal, a member of the proposed class of plaintiffs and a defendant are citizens of different states, satisfying the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A). As noted, at the time this lawsuit was filed and as of the date of this Notice of Removal, the Defendant was and is a non-Pennsylvania and non-Kentucky citizen, and a citizen of the state of Connecticut. And, at the time of the commencement of this action and as of the date of this Notice of Removal, the named plaintiff, Mary Barnhart, was alleged to be and is a citizen of Kentucky. (Compl., ¶ 4.)

**Number of Proposed Class Members.**

27.    Under 28 U.S.C. § 1332(d)(5)(B), CAFA does not apply when "the number of members of the proposed plaintiff classes in the aggregate is less than 100." In the regular course of business, Defendant does not track the number of policyholders who had not waived UM/UIM coverage, and whose claim was denied based on the Exclusion during the relevant period. Moreover, there is no method to run an electronic search across all files that would determine this information. However, Defendant estimates in good faith that, from April 1, 2013 – April 1, 2019, the number of affected policyholders in Pennsylvania exceeds 100.

28.    Defendant's estimate is based on the following information: (a) during the relevant time period, at least 735 UM/UIM claims in Pennsylvania were denied for reasons that were coded with general labels such as, "Coverage Not Afforded," "Claim Withdrawn," "Invalid," "Coverage

9

Denied—Other," etc.; (b) Defendant manually reviewed a sample of the 735 claims, and found

more than 80 that were denied based on the Exclusion, which were spread among three of the

denial reason codes; and (c) based on the sample reviewed, Defendant estimates that the full

universe of claims would include 100 or more denials based on the Exclusion. *See Dart Cherokee*

*Basin Operating Co. v. Owens*, 135 S. Ct. 547 (2014) (defendant's notice of removal need only

include "plausible allegation[s]" that jurisdictional requirements are satisfied, and evidence is

required only "when the plaintiff contests, or the court questions, the defendant's allegation.")

**Amount in Controversy.**

29.    CAFA confers original jurisdiction to the district courts over any class action where

"the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs,"

28 U.S.C. § 1332(d)(2); any plaintiff is diverse from any defendant, *id.* at § 1332(d)(2)(A) & (C);

and the number of class members is at least one hundred. *Reibstein v. Cont'l Tire N. Am., Inc.*,

No. CIV.A. 07-302, 2007 WL 1030486, at *1 (E.D. Pa. Apr. 2, 2007).

30.    It should be noted that a plaintiff's averment that the amount in controversy is less

than the jurisdictional threshold is not dispositive. *See, e.g., Morris v. Bankers Life & Cas. Co.*,

No. CIV.A. 11-7675, 2012 WL 602418, at *2 (E.D. Pa. Feb. 24, 2012) ("Even if a plaintiff states

that her claims fall below the threshold, a court must look to see if the plaintiff's actual monetary

demands in the aggregate exceed the threshold, irrespective of whether the plaintiff states that the

demands do not.").

31.    For example, in *Watson v. Prestige Delivery Sys., Inc.*, No. CV 16-1823, 2017 WL

635388, at *2 (W.D. Pa. Feb. 16, 2017), the court faulted a defendant for not timely removing a

case under CAFA even though the complaint indicated that the amount sought did not exceed $5 million, stating:

> Prestige nonetheless argues that it could not have known that the case was removable under CAFA because the state court complaints expressly provided that the amount in controversy was less than $5 million.... The Court, however, attaches no significance to Plaintiffs' assertions in their complaints that the amount in controversy is less than $5 million. As the United States Supreme Court held in *Standard Fire Insurance Co. v. Knowles*, 133 S. Ct. 1345 (2013), this type of pre- certification stipulation in a complaint does not, by itself, take a case outside CAFA's scope, because the stipulation can bind only the named plaintiff and not the entire proposed class. Id. at 1348–50. Thus, Prestige should have known (at least after the Supreme Court issued the *Knowles* decision in 2013) that Plaintiffs' allegations regarding the jurisdictional amount in controversy were not binding

*Id.*

32.    The "Third Circuit assesses the amount in controversy from the viewpoint of the plaintiff.... Additionally, the Supreme Court has held that '[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.' *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 347 (1977), so that the amount in controversy in *Hunt* was determined by the losses the members of the respondent apple-growers association would incur from the challenged statute." *County of Washington, Pa. v. U.S. Bank Nat. Ass'n,* No. CIV.A. 11-1405, 2012 WL 3860474, at *19 (W.D. Pa. Aug. 17, 2012), *report and recommendation adopted,* No. CIV.A. 11-1405, 2012 WL 3860438 (W.D. Pa. Sept. 5, 2012) (citations omitted).

33.    Here, as discussed in detail below, Plaintiff seeks both damages and declaratory relief for herself and the putative class for amounts Defendant supposedly wrongfully failed to pay based on the Exclusion. Accordingly, the value of the damages and the object of the litigation put

at issue by Plaintiff's Complaint is properly measured by the amounts the putative class members can recover from Defendant.

34.    For example, in *Watson v. Am. Nat. Prop. & Cas. Co.*, No. 15CV0888, 2015 WL 5007967 (W.D. Pa. Aug. 20, 2015), the plaintiff alleged the defendant insurer failed to obtain valid waivers of stacked UIM coverage.  The court found the amount in controversy requirement was met based on the affidavit submitted by one of the defendant's representatives which tracked the plaintiff's class definition, noting "Mr. Horsman testified that the data set forth on Exhibit 'B' was compiled using the following criteria: (1) ... claims under insurance policies issued by American National in Pennsylvania where an insured was involved in a motor vehicle accident on or after June 5, 2009 through the date the Complaint was filed on June 5, 2015; (2) where the American National insurance policy included a UIM rejection form similar to the one attached to the Complaint; (3) where the insured advised American National that the other driver was at fault for the motor vehicle accident; and (4) where the insured made a claim for payment to recover for injuries or damages under the American National policy." 2015 WL 5007967, at *8.  The court explained "Mr. Horsman further testified that '[b]ased upon the data compiled, there were 119 claims and claimants who met these criteria as identified in Exhibit 'B' attached to the Notice of Removal." *Id.*  He also testified that 'total amount of liability coverage' implicated by stacking the vehicles of the 119 individuals identified on Exhibit 'B' was $33,315,000." *Id.,* *9.

35.    The court stated:

> The Court finds as fact that the criteria used to compile the data on Exhibit "B" as set forth in Mr. Horsman's affidavit, and in the Notice of Removal, comports with the description of the class criteria supplied by Plaintiff in paragraph 20 of his Complaint. Therefore, the Court finds as fact that Exhibit "B" contains the names of all persons who were Pennsylvania citizens on the date of the filing of the Complaint; who were insureds of

12

> Defendant as defined by MVFRL or the applicable insurance policy;
> which policy provided that UIM benefits were rejected; for whom
> Defendant cannot purportedly produce a "valid" rejection form for UIM
> coverage as required by 75 Pa.C.S.A. § 1731(c. I); and who were injured
> in motor vehicle accidents by an underinsured motorist on or after June 5,
> 2009.

*Id.*

36.    The court held: "Based upon the above findings of fact, the Court concludes that

Exhibit 'B' is, in fact, a reliable document. As such, the Court finds that there are at least 100

individuals who comprise the putative class per Plaintiff's description, set forth in paragraph 20 of

his Complaint. Because paragraph 20 is the most restrictive definition and description of the

putative class, the Court has reviewed this matter in a light most favorable to Plaintiff, who has

petitioned for remand. The number of putative class members, 119, exceeds the minimum number

necessary to assert federal jurisdiction under CAFA." *Id.* (also stating "The Court further finds

that the total amount of liability coverage, stacked for each of the 119 insured vehicles identified

on Exhibit 'B,' was correctly calculated to arrive at the sum of $33,315,000. This amount exceeds

the $5,000,000 jurisdictional threshold under CAFA.").

37.    In *Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746, 755 (W.D. Pa.

2015), where the plaintiff challenged the defendant insurer's practice of deducting depreciation in

adjusting property damage claims, the court found the amount in controversy requirement was met

based on the defendant's declaration estimating damages based on the class definition:

> Defendant submitted the declarations of Jaun L. Guevara, Jr.
> ("Guevara")—defendant's "[c]laim [c]onsultant—in which Guevara
> swore he applied plaintiffs' class definition to defendant's claims data
> through its "software vendor, Xactware, Inc.," to conclude that
>
> > *for the year 2014 alone,* which is the year of [plaintiffs']
> > alleged loss, there were more than 16,000 estimates uploaded
> > to [defendant's electronic structural damage estimating

> software] for homeowners' structural damage claims in
> Pennsylvania that showed a deduction for depreciation.... [This
> data reflected a] total amount of depreciation deductions ... [of]
> over $30,000,000.... [E]ven if one were to exclude [the seventy-
> four claims for total loss, as opposed to claims for partial loss
> like the claim alleged in plaintiffs' state court complaint], there
> still would be around 16,000 remaining [c]laims for 2014
> alone[,] ... [a]nd the total amount of depreciation deductions
> reflected ... for those remaining claims—in 2014 alone—was
> approximately $27,000,000....

*Id.*

38.    The court concluded: "Beyond criticizing the calculations in Guevara's

declarations as 'guesstimate [s],' plaintiffs fail to adduce proof rebutting defendant's evidence that

*in just one year* of the class period—which spans from 'January 1, 2011' to the present—defendant

deducted approximately '$27,000,000' in depreciation form partial home loss payments involving

putative class members.... Defendant, therefore, proved by a preponderance of the evidence that

plaintiffs' claims seek more than $5,000,000 in damages in the form of depreciation deductions,

which satisfies CAFA's amount in controversy requirement." *Id.* at 755-56.

39.    In *Reibstein*, 2007 WL 1030486, at *2, the court explained that the defendants had

cited Rebstein's claim that defendants' agent—in violation of defendants' promise to provide "a

free replacement set of tires," Compl. ¶ 29—required Reibstein to purchase "a full set of

replacement ContiSeal tires" for $568, "purportedly representing a discount of 33% on the

manufacturer's suggested retail price for purchase of the ContiSeal tires." The defendants argued:

> Using plaintiff's claimed discounted retail sales price of a single ContiSeal
> tire ($142.00), and the number of original equipment ContiSeal tires
> reasonably likely to have been sold in Pennsylvania as of October 1, 2006
> [(38,624)], plaintiff's amount in controversy, based on these figures alone,
> totals $5,484,608. Significantly, this figure does not include any vehicles
> registered in Pennsylvania from October 1, 2006 to the present, since the
> requisite data has not yet been collected by R.L. Polk & Co. Nor does this

14

> figure include any estimate for *replacement* (as opposed to original
> equipment) ContiSeal tires sold from 2004 to the present ....

*Id.* (emphasis in original).   The court noted "Reibstein has not offered any evidence tending to rebut defendants' statistics or calculations," and concluded "Defendants have, by means of the above submissions, provided this court with all the information available to make ... a determination ... that the plaintiff's claim in all likelihood exceeds $5 million. Accordingly, I conclude that defendants have met their burden of showing to a legal certainty that CAFA's amount in controversy requirements have been met." *Id.* (citation and internal quotations omitted).

40.     *Barreras v. Travelers Home & Marine Ins. Co.,* No. 12-CV-0354 RB/RHS, 2012 WL 12870348, *3 (D.N.M. Oct. 17, 2012), also provides guidance.  There, the plaintiffs alleged they were not advised of their UM/UIM options and had not signed a waiver of UM/UIM coverage. The plaintiffs filed a lawsuit seeking to recover for what they deemed a wrongful and bad faith scheme by defendants to deny UM/UIM coverage.  The court explained:

> Plaintiffs allege that the entire class lacks UM/UIM coverage. (*See* Doc.
> 1 Ex. A at 6, 8).  Plaintiffs seek reformation of their insurance policies,
> presumably to include UM/UIM coverage. (*See id.* at 16).  In New Mexico,
> the minimum limit of UM/UIM coverage is $25,000 for injury or death of
> one person as the result of an accident and $50,000 for injury or death of
> two or more persons as the result of an accident. N.M. STAT. ANN. § 66-
> 5-215(A) (West 2012).  Because the coverage increases by up to $50,000,
> the total value of the reformation to the plaintiffs would be $50,000 per
> policy, for a total of at least $5,000,000.  Even assuming that the coverage
> increase is only $25,000 per policy for a total of at least $2,500,000,
> aggregating that amount with the potential punitive damages award and
> attorneys' fees would satisfy the amount in controversy requirement.

41.     In *Stanforth v. Farmers Ins. Co. of Arizona*, No. CV 09-1146 RLP/RHS, 2010 WL 11437167, *3 (D.N.M. Apr. 22, 2010), the plaintiffs alleged the Defendants wrongfully induced them to reject stacked UIM coverage.  The court explained:

Defendants have advanced three methods of calculating damages to reach the jurisdictional requirement of $5,000.000. One method I will term the household average calculation. In support of this calculation, the Notice of Removal included affidavit testimony establishing that during the relevant period before the court, there were 87,020 households with Farmers' auto coverage for some period of time, of which 10,178 had no UM/UIM coverage. For those with some UM/UIM coverage (76,842 households), Farmers paid a total of $41,055,371 on 3,407 UM/UIM claims, for an average of $524 per household. Defendants assert that it is reasonable to estimate that the accident rate for those insureds with no UM/UIM coverage would be the same as for those with coverage. They then apply the average UM/UIM recovery to the households with no coverage, and arrive at an amount in controversy of $5,435,052. I find this method to be reasonable, nonspeculative, and substantiated by the record.

*Id.* (footnote omitted).

42.    As the above cases show, it is appropriate to base a removal amount-in-controversy calculation on a plaintiff's own complaint allegations and reasonable estimates and calculations. As in the above cases, and as will be further demonstrated below, there is no question the CAFA amount in controversy requirement is met in this case.

43.    Plaintiff's Complaint puts at issue the entire amount Defendant supposedly wrongfully failed to pay for UM/UIM coverage based on the Exclusion during the alleged class period of six years. Plaintiff seeks a declaration that she and the putative class members "are entitled to UM/UIM benefits which were previously not paid by Travelers on the basis of the Exclusion." (Compl., ¶ 18.) Plaintiff also asks the Court to "Award damages ... to the proposed class." (*Id.,* p.5.)

44.    Defendant's records reflect that, from April 1, 2013 to April 1, 2019, the available limits for Pennsylvania claims where UM/UIM coverage was denied based on the Exclusion (and where coverage had not been waived) was well in excess of $5 million. Thus, if Plaintiff prevails

16

on her liability theory, which is that Defendant should be required to pay her and the putative class members the amounts of UM/UIM coverage it did not pay based on the Exclusion, the amount in controversy would be satisfied.

45.     In sum, given Plaintiff's Complaint allegations and all the reasonably justifiable calculations set forth above, the minimum jurisdictional amount requirement of $5,000,000 is satisfied.

**CAFA Applies to this Action.**

46.     CAFA applies to actions "commenced" on or after its effective date, February 18, 2005. This action was filed in April, 2019, so CAFA clearly applies.

## II.     THE EXCEPTIONS UNDER CAFA DO NOT APPLY.

47.     The mandatory and discretionary exceptions to removal under 28 U.S.C. § 1332(d) also do not apply, because they all require a defendant to be a citizen of the forum state. *See* 28 U.S.C. § 1332(d)(4)(A)(II); 28 U.S.C. § 1332(d)(4)(B); and 28 U.S.C. § 1332(d)(3).   Here, Defendant is not, nor is it alleged to be, a citizen of Pennsylvania; as demonstrated above it is in fact a citizen of Connecticut.

## III.     THE OTHER PROCEDURAL REQUISITES FOR REMOVAL ARE SATISFIED.

48.     Removal is timely under 28 U.S.C. §§ 1446(b) and 1453, because the Complaint in this case is the first pleading, motion, order, or other paper from which it could first be ascertained that this action is one which is or has become removable.  The Complaint was first served on April 3, 2019, and this Notice of Removal is filed within thirty days after that initial service.  In addition, venue is appropriate here because the alleged acts and omissions giving rise to this action occurred here.  28 U.S.C. § 1391.  Pursuant to 28 U.S.C. § 1446(a), attached as Exhibit B is a composite copy of all the state court pleadings and process in this matter.  Attached as Exhibit C is a copy of

LEGAL/122472531.v1

the notice of filing of notice of removal in the state court. The Defendant has, therefore, satisfied all the requirements for removal under 28 U.S.C. § 1446 and all other applicable rules.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests this Court assume full jurisdiction over the cause herein as provided by law. The Defendant intends no admission of liability by this Notice and expressly reserves all defenses, motions, and pleas, including without limitation objections to the sufficiency of Plaintiff's pleadings and to the propriety of class certification.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

DATE: May 3, 2019                By: _Brooks R. Foland_

Brooks R. Foland, Esquire
Attorney ID# 70102
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011
Ph. 717-651-3714
Fax 717-651-3707
Email: brfoland@mdwcg.com
*Attorney for Defendant*

18

## CERTIFICATE OF SERVICE

I, Brooks R. Foland, Esquire, of Marshall Dennehey Warner Coleman & Goggin, do hereby

certify that on this 3rd day of May, 2019, I served a copy of the foregoing document via Electronic

Court Filing (ECF) and via email, as follows:

William M. Martin, Esquire
William M. Radcliffe, Esquire
Radcliffe Law, LLC
648 Morgantown Road, Suite B
Uniontown, PA 15401
Email: wmm@radlaw.net
*Attorney for Plaintiff*

_____

Brooks R. Foland