**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARY BARNHART, | **Case 2:19-cv-00523** |
| Plaintiff, | **MEMORANDUM OF LAW IN** |
| | **SUPPORT OF MOTION TO** |
| vs. | **DISMISS** |
| THE TRAVELERS HOME AND MARINE INSURANCE COMPANY, | |
| Defendant. | |

Defendant, The Travelers Home and Marine Insurance Company ("Defendant"),

respectfully moves this Court for an order dismissing Plaintiff's Complaint.  As a matter of law,

Plaintiff's liability theory is legally untenable.

Plaintiff is asking this Court to force Defendant to pay her insurance coverage for a risk

(injuries Plaintiff sustained while riding her husband's motorcycle) which Defendant did not

insure, and for which Plaintiff paid no premiums.  Plaintiff's liability theory is based on the

Pennsylvania Supreme Court's recent ruling in *Gallagher v. GEICO*.  As demonstrated below,

however, *Gallagher* does not apply to the circumstances of Plaintiff's case.  In *Gallagher*,

GEICO issued two separate policies -- a motorcycle policy and an automobile policy -- to

Gallagher.  Gallagher paid a premium on both policies, including for the ability to stack

uninsured/underinsured motorist ("UM/UIM") coverage.  Section 1738 of the Pennsylvania

Motor Vehicle Financial Responsibility Law ("MVFRL") requires stacking of UM/UIM

coverage, unless the insurer obtains an express written waiver of stacking.  After Gallagher was

injured in a motorcycle accident and exhausted the limits of both the other driver's policy and UM/UIM coverage under his own GEICO motorcycle policy, he sought UM/UIM benefits under his GEICO automobile policy.  GEICO denied the claim based on the policy's "household exclusion," which excluded coverage for bodily injury sustained while occupying a vehicle owned or leased by the insured or a relative that is not insured under the policy for UM/UIM coverage.  *Gallagher* held that, because GEICO had issued both Gallagher's motorcycle and auto policies and unilaterally placed the vehicles on separate policies, GEICO clearly knew of the risk posed by Gallagher's motorcycle.  Moreover, Gallagher had paid for stacking on both policies. Accordingly, the Court held that the application of the "household exclusion" under those circumstances resulted in a *de facto* waiver of stacked UM/UIM coverage without the statutorily-required waiver, and concluded the exclusion was unenforceable.

Here, Plaintiff's theory is that because Defendant denied UM/UIM coverage for an accident involving a motorcycle based on the regular use exclusion in Plaintiff's automobile insurance policy issued by Defendant, that has resulted in an improper *de facto* waiver of UM/UIM coverage.  As discussed in detail below, this case is nothing like *Gallagher.* Defendant's denial of coverage was not based on the "household exclusion" at issue in *Gallagher,* but on the regular use exclusion about which Plaintiff complains.  Unlike the insurer in *Gallagher,* Defendant issued only one policy -- the automobile insurance policy -- *not* the motorcycle policy, which was issued by a different insurer.  Accordingly, Plaintiff cannot and does not allege that Defendant was aware of the risk for which Plaintiff is now demanding it pay UM/UIM coverage benefits.  Nor did Plaintiff pay, or allege to have paid, any premiums to Defendant for UM/UIM coverage on the motorcycle.  Nothing in *Gallagher* precludes an insurer

from relying on the regular use exclusion to avoid having to pay for such an unforeseeable risk --
a risk for which neither party bargained and for which Defendant received no premium.  And, in
fact, the Pennsylvania Supreme Court previously upheld a regular use exclusion, holding it did
not conflict with the MVFRL provision on which Plaintiff relies here (which controlling law was
not overruled by *Gallagher*).

In sum, *Gallagher* does not apply, there was no *de facto* waiver of UM/UIM coverage
here, and Defendant properly denied Plaintiff's claim for UM/UIM coverage.  Plaintiff's
Complaint should be dismissed.

## COMPLAINT ALLEGATIONS

Plaintiff alleges that, on July 15, 2015, she was injured as a passenger while on a
motorcycle operated by her husband, William Barnhart, when a vehicle driven by Terry Heffner
crossed in front of the motorcycle and caused it to leave the road.  (Compl., ¶ 4.)  Plaintiff
alleges that at the time of the accident, she had in effect a motor vehicle insurance policy issued
by Defendant which provided uninsured/underinsured motor ("UM/UIM") coverage with limits
of $50,000 per person and $100,000 per accident.  (Compl., ¶ 5.)

According to Plaintiff, she made a claim against and recovered from the tortfeasor's
liability carrier, but her damages exceeded the applicable policy limits from that insurer.
(Compl., ¶¶ 6, 7.)  Plaintiff alleges she then made a claim for UIM benefits under the policy
issued by Defendant.  (Compl., ¶ 7.)  Plaintiff alleges that, on March 15, 2019, Defendant denied
her UIM claim based on the regular use exclusion ("Exclusion") in Defendant's policy.  (Compl.,
¶ 8 & Exhibit B thereto.)

As set forth in the denial letter attached as Exhibit B to the Complaint, the Exclusion precludes UM/UIM coverage for bodily injury sustained by the insured while occupying or when struck by any motor vehicle the insured owns or that is furnished or available for the insureds regular use and is not insured for UM/UIM coverage under the applicable policy.  (Compl., Exhibit B.)  Because the motorcycle was owned by the Barnharts and was not insured under the Barnharts' automobile policy, or, for that matter, by any policy issued by Defendant, Defendant denied UIM coverage based on the Exclusion.  (*Id.*)

Plaintiff alleges that at all relevant times UM/UIM coverage under the automobile policy issued by Defendant had not been waived in accordance with Sections 1731(b) and (c) of the MVFRL, 75 Pa. C.S.A.  (Compl., ¶ 10.)  According to Plaintiff, the Exclusion operates as a *de facto* waiver of UM/UIM coverage, in contravention of Section 1731(a) of the MVFRL, and is therefore unenforceable.  (Compl., ¶¶ 12, 13.)  Plaintiff seeks a declaration that the Exclusion violates Section 1731 and "does not preclude Barnhart from recovering UIM benefits under the Travelers Policy."  (Compl., ¶ 14.)

Plaintiff seeks to represent the following putative class:  "(1) persons injured in motor vehicle accidents from April 1, 2013, to the present as the result of the negligence of an uninsured or underinsured motorist; (2) who were "insureds" under motor vehicle insurance policies issued by Travelers wherein UM/UIM coverage was not waived pursuant to Sections 1731(b) and (c) of the MVFRL; and (3) for whom UM/UIM benefits were not paid by Travelers due to the Exclusion."  (Compl*.*, ¶ 25.)  Plaintiff asserts the following substantive causes of action:  Count I:  Declaratory Relief, seeking a declaration that the Exclusion violates the MVFRL and therefore does not preclude Plaintiff or the putative class members from recovering

UIM benefits from Defendant; and Count II:  Assumpsit, alleging that Defendant breached the insurance policy by denying Plaintiff's claim for UIM coverage based on the Exclusion. (Compl., pp. 2-3.)

## I.    PLAINTIFF'S LEGAL THEORY FAILS TO STATE A VALID CLAIM.

Plaintiff's Complaint should be dismissed.  Plaintiff's liability theory -- *i.e.,* that the Exclusion violates the MVRFL because it supposedly results in a *de facto* waiver of UIM coverage -- is based on the Pennsylvania Supreme Court's decision in *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131 (Pa. 2019).  A plain reading of *Gallagher,* however, demonstrates it does not apply here, and, in fact, actually undermines Plaintiff's liability theory.

Before turning to *Gallagher,* however, it should be noted that the Pennsylvainia Supreme Court's decision in *Williams v. GEICO Gov't Employees Ins. Co.,* 32 A.3d 1195 (2011), which upheld a regular use exclusion and was *not* overruled in *Gallagher*, is directly on point and negates Plaintiff's liability theory.  In *Williams*, unlike in *Gallagher,* the Court addressed whether a regular use exclusion similar to that at issue here conflicted with Section 1731 -- *i.e.,* the MVFRL provision on which Plaintiff relies -- and upheld the regular use exclusion.   The insured, a state trooper, was injured while operating a vehicle owned by the state police. Williams sought UIM coverage under his personal auto insurance policy issued by GEICO. GEICO denied coverage based on its policy's regular use exclusion, which precluded UIM coverage "When using a motor vehicle furnished for the regular use of you, your spouse, or a relative who resides in your household, which is not insured under this policy."  32 A.3d at 1197.

Like Plaintiff here, Williams argued the regular use exclusion violated Section 1731, which required the "insurer to obtain written waivers of UIM coverage signed by the insured on

the form established in the statute." *Id.* at 1207.  The Court explained "Appellant suggests that the regular-use exclusion violates these provisions because it removes the mandatory UIM coverage required by statute without complying with the written requirement of waiver on the form authorized by section 1731." *Id.*  The Court rejected that argument, stating (*id.* at 1208-09):

> The regular-use exclusion as applied here is neither an implicit waiver of coverage nor an improper limitation on the statutorily mandated coverage.  Rather, it functions as a reasonable preclusion of coverage of the unknown risks associated with operating a regularly used, non-owned vehicle. . . .  [T]he regular-use exclusion is not void as against public policy.  A contrary decision is untenable, as it would require insurers to compensate for risks they have not agreed to insure, and for which premiums have not been collected.

In short, in *Williams,* as here, the plaintiff claimed a regular use exclusion was contrary to Section 1731 because it resulted in denial of UIM coverage without a proper waiver.  In *Williams,* as here, the defendant insurer issued only the insured's automobile policy and did not issue or collect premiums for the policy on the vehicle involved in the accident.  In *Williams,* the vehicle involved in the accident was an unknown risk, and here, the Complaint does not allege Defendant was even aware of the motorcycle on which Plaintiff was riding when she was injured.  This case is, therefore, controlled*,* by *Williams* which, again, was *not* overruled by *Gallagher.*  Indeed, as will be demonstrated below, this case is materially distinguishable from *Gallagher.*

**A. Holding of *Gallagher.***

In *Gallagher,* a motorcyclist sued his insurer, GEICO, to recover stacked UIM benefits under his motorcycle and automobile policies, both of which were issued by GEICO.  GEICO paid the $50,000 UIM limit under the motorcycle policy but denied UIM coverage under the automobile policy based on a "household vehicle exclusion," which provided:  "This coverage does not apply to bodily injury while occupying or from being struck by a vehicle owned or

leased by you or a relative that is not insured for Underinsured Motorists Coverage under this policy." *Id.* at 133.  Because Gallagher suffered bodily injury while occupying his motorcycle, which was not insured under the automobile policy, GEICO took the position that the household vehicle exclusion precluded Gallagher from receiving stacked UIM coverage under that policy.

The Court agreed with the plaintiff that the exclusion violated Section 1738 of the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. § 1738, because the exclusion impermissibly acted as a *de facto* waiver of stacked UM/UIM coverage.  The plaintiff argued "that GEICO placed his motorcycle and automobiles on separate policies and, thus, had full knowledge of all of his vehicles. He further stated that, because he opted and paid for stacked UM/UIM coverage, GEICO charged him a higher premium on both policies. According to Gallagher, by denying him stacked UIM coverage based upon the household vehicle exclusion, GEICO was depriving him of the stacked UIM coverage for which he paid. Gallagher highlighted that GEICO was well aware that he had not waived stacked coverage on either of his policies and that he had paid increased premiums for that coverage; yet, GEICO refused to honor his claim for stacked UIM coverage, rendering that coverage illusory." *Id.* at 133.  The Court further noted "Gallagher argues that the inclusion of the exclusion stripped him of the stacked coverage to which he was entitled under the MVFRL because he did not waive stacked UIM coverage. In this regard, Gallagher contends that he 'paid for phantom stacked UIM coverage' because, in reality, the household vehicle exclusion ensures that the Automobile Policy's UIM coverage could never be stacked with the coverage available under the Motorcycle Policy. . . . He further maintains that the household vehicle exclusion is invalid because it prevents his

receipt of stacked UIM coverage in the absence of a MVFRL-compliant stacking waiver." *Id.* at

136.

The Court agreed that the exclusion was contrary to Section 1738, stating:

> This policy provision, buried in an amendment, is inconsistent with the
> unambiguous requirements of Section 1738 of the MVFRL under the
> facts of this case insomuch as it acts as a *de facto* waiver of stacked UIM
> coverage provided for in the MVFRL, despite the indisputable reality
> that Gallagher did not sign the statutorily-prescribed UIM coverage
> waiver form. Instead, Gallagher decided to purchase stacked UM/UIM
> coverage under both of his policies, and he paid GEICO premiums
> commensurate with that decision. He simply never chose to waive
> formally stacking as is plainly required by the MVFRL.
>
> One of the insurance industries' age-old rubrics in this area of the law is
> that an insured should receive the coverage for which he has paid. Here,
> GEICO argues against this maxim by invoking the household vehicle
> exclusion to deprive Gallagher of the stacked UIM coverage that he
> purchased. This action violates the clear mandates of the waiver
> provisions of Section 1738. Indeed, contrary to Section 1738's explicit
> requirement that an insurer must receive an insured's written
> acknowledgement that he knowingly decided to waive UM/UIM
> coverage, the household vehicle exclusion strips an insured of default
> UM/UIM coverage without requiring an insurer to demonstrate, at a bare
> minimum, that the insured was even aware that the exclusion was part of
> the insurance policy. This practice runs contrary to the MVFRL and
> renders the household vehicle exclusion invalid and unenforceable. . . .
> In fact, this case is a prime example of why household vehicle exclusions
> should not and cannot operate as a pretext to avoid stacking.

*Id.* at 138 (citation omitted).

In short, because GEICO had issued both Gallagher's automobile and motorcycle policies

and unilaterally placed them on separate policies, GEICO clearly knew of the risk posed by

Gallagher's motorcycle.  Moreover, Gallagher had paid for stacking on both policies, and was

entitled to the benefit of his bargain.  Accordingly, the Court held that the application of the

"household exclusion" under those circumstances acted as a *de facto* waiver of stacked coverage

without the statutorily-required express waiver, and concluded that the exclusion was

unenforceable.

**B.** ***Gallagher* Does Not Apply Where, Unlike Here, the Insured Is Not Seeking to Stack UM/UIM Coverage under Two Policies Issued by the Same Insurer to the Same Insured.**

Based on the Court's own reasoning, *Gallagher* clearly applies only to situations where,

unlike here, the insured is seeking to stack UIM benefits under two policies issued by the same

insurer to the same named insured.  The Court stated:

> Often in these cases, an insurer contends that it should not have to
> provide stacked coverage when an insured purchases UM/UIM coverage
> on his motorcycle in Policy A, and then purchases UM/UIM coverage on
> passenger cars in Policy B. *The obvious argument is that the insurer of
> the passenger cars is unaware of the potentiality of stacking between the
> car policy and the motorcycle policy. Here, however, GEICO was aware
> of this reality, as it sold both of the policies to Gallagher and collected
> premiums for stacked coverage from him.* To the extent that GEICO's
> premium would be higher on an automobile policy because of stacking
> with a motorcycle policy, all GEICO has to do is quote and collect a
> higher premium. There simply is no reason that insurers cannot comply
> with the Legislature's explicit directive to offer stacked UM/UIM
> coverage on multiple insurance policies absent a knowing Section 1738
> waiver and still be fairly compensated for coverages offered and
> purchased.

*Id.* at 138 (emphasis added).

The Court's emphasis on GEICO's awareness of the potential for stacking between the

auto and motorcycle policies since it sold both policies to the same named insured and collected

premiums for stacked coverage from him is precisely what clearly indicates that *Gallagher* is

inapposite here.  Specifically, *Gallagher* does not apply where, as here, the insurer issued only

the auto policy to the named insureds and collected premiums only for that policy, and the

subject motorcycle policy was issued by a different carrier.  The *Gallagher* Court obviously did

not rule that its decision applied where two different insurers issued the motorcycle and auto policies -- particularly given the Court's express admonition that the reason GEICO could not enforce its household exclusion was that GEICO was aware of the potential for stacking between the auto and motorcycle policies since it sold the policies to the same named insured and collected premiums for stacked coverage.  Here, unlike in *Gallagher,* Defendant did not insure the Barnharts' motorcycle; another company, Progressive, insured that vehicle.  So, unlike in *Gallagher,* Plaintiff cannot and does not allege Defendant had reason to know of the motorcycle or that it collected premiums for UM/UIM coverage on that vehicle.  Rather, here, unlike in *Gallagher*, Plaintiff is seeking windfall coverage for an accident involving a vehicle of which Defendant was completely unaware and as to which Defendant collected absolutely no premium and, unlike GEICO in *Gallagher*, could never collect a premium.

In fact, Judge Kearney recently emphasized the limitations of the *Gallagher* holding in *Butta v. GEICO Cas. Co.,* No. 19cv675, 2019 WL 1756019 (E.D. Pa. Apr. 19, 2019).  There, the court noted that *Gallagher* expressly decided two narrow issues:

> (1) Whether the "household vehicle exclusion" violates Section 1738 of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL) *where GEICO issued all household policies and unilaterally decided to issue two separate policies*, when the insured desired stacking, elected stacking, paid additional premiums for stacking and never knowingly waived stacking of underinsured motorist benefits?

> (2) Whether the "household vehicle exclusion" impermissibly narrows or conflicts with the statutory mandates of the Pennsylvania Motor Vehicle Financial Responsibility Law and the evidence of record is that *GEICO was fully aware of the risks of insuring a motorcycle in the same household as other family vehicles but unilaterally decided to write a separate motorcycle policy*?

10

*Id.* at *6-7 (citing *Gallagher,* emphasis added) (further noting the *Gallagher* Court focused on the fact that GEICO could not argue it did not know the motorcycle existed since it sold and collected premiums for both policies, and that *Gallagher* emphasized it was "deciding the discrete issue before the Court."). While Defendant respectfully disagrees with Judge Kearney's holding in *Butta* that *Gallagher* should be applied retroactively, his reasoning further shows that *Gallagher* should not be applied beyond its specific facts, as Plaintiff asks this Court to do here.

Highlighting the above analysis, the *Gallagher* Court noted that the plaintiff there had opted and paid for stacked UM/UIM coverage not only on the automobile policy issued by GEICO, but also on the motorcycle policy GEICO had issued. 201 A.3d at 133. As the Court explained: "Gallagher pointed out that GEICO placed his motorcycle and automobiles on separate policies and, thus, had full knowledge of all of his vehicles. He further stated that, because he opted and paid for stacked UM/UIM coverage, GEICO charged him a higher premium on both policies. According to Gallagher, by denying him stacked UIM coverage based upon the household vehicle exclusion, GEICO was depriving him of the stacked UIM coverage for which he paid. Gallagher highlighted that GEICO was well aware that he had not waived stacked coverage on either of his policies and that he had paid increased premiums for that coverage; yet, GEICO refused to honor his claim for stacked UIM coverage, rendering that coverage illusory." *Id.*

Here, Plaintiff does not and cannot allege that she opted or paid for stacked UM/UIM coverage on the policy issued by Progressive. Accordingly, the concern in *Gallagher* about selecting and paying a premium for stacked coverage on two policies, let alone two policies

11

issued by the same insurer, is not present here.  And certainly there is no illusory coverage issue where, as here, Defendant did not even know about, let alone insure, the subject motorcycle.

Moreover, *Gallagher* addressed only whether a household exclusion conflicted with Section 1738, mandating stacking of UM/UIM coverage absent a waiver.  Here, Plaintiff does not refer to Section 1738 in her Complaint.  Rather, as discussed above, Plaintiff alleges Defendant's exclusion conflicts with Section 1731(a), which mandates the inclusion of UM/UIM coverage unless waived under subparts (b) and (c):  "(a) Mandatory offering.--No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional)."

*Gallagher* did not address Section 1731 at all, which is another reason it has no bearing here.  Indeed, extending *Gallagher*'s holding to Section 1731, particularly in situations where the auto insurer did not issue the policy covering the motorcycle and did not know of the motorcycle, would result in the evisceration of any and all UM/UIM exclusions.  Plaintiff's theory that the regular use exclusion results in a *de facto* waiver of UM/UIM coverage would extend to *all* exclusions where the insurer otherwise validly denies UM/UIM coverage based on an exclusion. That same concern was voiced by the dissenting justice in *Gallagher,* albeit in the context of UM/UIM stacking, and the *Gallagher* majority dismissed it, stating the issue was not before the Court.  *Gallagher,* 201 A.3d at 139 n. 8. ("As in every case, we are deciding the discrete issue before the Court and holding that the household vehicle exclusion is unenforceable because it

12

violates the MVFRL. Unlike the Dissent, we offer no opinion or comment on the enforceability of any other exclusion to UM or UIM coverage or to coverage in general, including exclusions relating to racing and other inherently dangerous activities. Dissenting Opinion 141-42. If, at some later date, the Court is presented with issues regarding the validity of other UM or UIM exclusions, then we will address them at that time. Our focus here is narrow, regardless of the Dissent's lament to the contrary.").

By contrast, as discussed above, the *Williams* Court *did* address whether a regular use exclusion similar to that at issue here conflicted with Section 1731 and held it did not.  To the contrary, *Williams* found the regular use exclusion functioned as a "reasonable preclusion of coverage of the unknown risks associated with operating a regularly used, non-owned vehicle." 32 A.3d at 1208.  If, as here, the regular use exclusion were found unenforceable, "it would require insurers to compensate for risks they have not agreed to insure, and for which premiums have not been collected." *Id.* at 1209.  Since *Gallagher* expressly stated it was not ruling on any exclusion beyond the specific household exclusion at issue there, and since *Williams* specifically upheld the exclusion at issue here but not in *Gallagher*, *Williams* is controlling in this case and must be followed.  If *Williams* is to be overruled, that can only be done by the Pennsylvania Supreme Court, and that Court specifically disavowed any such action in *Gallagher*.

As noted, if Plaintiff's theory that denial of UM/UIM coverage based on the regular use exclusion results in an improper *de facto* waiver of UM/UIM coverage were accepted, that would apply any time an insurer denied UM/UIM coverage based on *any* otherwise valid policy exclusion.  For example, if an insured was injured while improperly using a vehicle without a reasonable belief that he or she was entitled to use that vehicle, a coverage exclusion for such

instances that would otherwise apply would be found invalid under Plaintiff's theory. This is so because it would be deemed a *de facto* waiver of UM/UIM coverage simply because the insurer denied such coverage based on a provision designed to guard against this type of unknown risk (*i.e.,* injuries occurring while an insured is improperly using other vehicles without permission). *Gallagher* cannot be construed to apply so broadly -- at least unless and until the Pennsylvania Supreme Court expressly invalidates, on a case by case basis, the exclusion at issue (which, again, it has not done with the exclusion here).

Indeed, the *Gallagher* Court heavily based its ruling on the principle that "an insured should receive the coverage for which he has paid." 201 A.3d at 138. In *Williams,* the Court heavily relied on the clear corollary to this rule -- *i.e.,* that insureds should not be able to recover insurance benefits for which they have not paid:

> [T]here is a correlation between premiums paid by the insured, and the coverage the claimant should reasonably expect to receive.
>
> *    *    *
>
> The overriding concern . . . is to ensure that both insurer and insured receive the benefit of what is statutorily required and contractually agreed-upon (consistently with statutory requirements) and nothing more. As this Court recognized . . . an insured should not be permitted to demand coverage for a risk for which coverage was not elected or premiums paid.

32 A.3d at 1200 (citations and internal quotations omitted).

Put simply, *Gallagher* should not be applied beyond what the Court actually considered and ruled on -- *i.e.,* whether application of a household exclusion amounts to a de facto waiver of stacked UM/UIM coverage where, unlike here, the insurer issued both the automobile and motorcycle policies, unilaterally placed the vehicles on separate policies, clearly knew of the risk posed by the motorcycle, and the insured paid for stacking on both policies. *Gallagher* should *not*

be applied where, as here, the insurer issued only the automobile policy, not the motorcycle policy, did not know of the motorcycle, and the insured did not bargain for or pay Defendant a premium for any UM/UIM coverage on that motorcycle.  For that simple reason, Plaintiff's legal theory is wholly without merit, and her Complaint should be dismissed.

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests this Court enter an order dismissing Plaintiff's Complaint with prejudice and without leave to amend.

Respectfully submitted,

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

DATE:  May 10, 2019                          By: *s/Brooks R. Foland*
                                                Brooks R. Foland, Esquire
                                                Attorney ID# 70102
                                                100 Corporate Center Drive, Suite 201
                                                Camp Hill, PA 17011
                                                Ph. 717-651-3714
                                                Fax 717-651-3707
                                                Email: brfoland@mdwcg.com
                                                *Attorney for Defendant*

15

## <u>CERTIFICATE OF SERVICE</u>

I, Brooks R. Foland, Esquire, of Marshall Dennehey Warner Coleman & Goggin, do hereby certify that on this 10th day of May, 2019, I served a copy of the foregoing document via Electronic Court Filing (ECF), as follows:

William M. Martin, Esquire
William M. Radcliffe, Esquire
Radcliffe Law, LLC
648 Morgantown Road, Suite B
Uniontown, PA 15401
Email: wmm@radlaw.net
*Attorney for Plaintiff*

*s/Brooks R. Foland*
Brooks R. Foland
